IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                              CR No. 03-2061 LH

**JOE BLACKIE,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress (Docket No. 10). The Court, having considered the motion and the response thereto, as well as arguments of counsel and testimony presented at a suppression hearing on January 5, 2004, concludes that the motion is not well taken and shall be **denied**.

At the hearing, the Court made various factual findings and legal conclusions on the record. These findings and conclusions are supplemented and to some extent superceded by those contained in this Memorandum Opinion and Order.

There is no evidence before the Court to indicate that Defendant was in custody during the

1

interview.[1]  Defendant does not contend that he was in custody or subject to a custodial interrogation prior to the making of his statements.  In fact, upon inquiry from the Court, defense counsel specifically indicated that it was not Defendant's position that he was in custody.  For these reasons, the Court concludes that in fact Defendant was not in custody.[2]  As a non-custodial defendant, Defendant was clearly not under arrest, he was free to refuse to answer questions posed by law enforcement, he was free to leave the setting and free to seek out and consult a lawyer.

Despite his admittedly non-custodial status, Defendant's motion contends that law enforcement's refusal to allow him counsel rendered any statements he made involuntary (Mot. to Supp. at 2).  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court examined an individual's Fifth and Fourteenth Amendment right to be free from compelled self-incrimination in the context of custodial interrogation, and concluded that certain procedural safeguards were necessary to dissipate the compulsion inherent in custodial interrogation.  *See also United States v. Bautista*, 145 F.3d 1140, 1146 (10th Cir. 1998).  These procedural safeguards include certain rights of which an accused must be informed and that he must waive before custodial interrogation can commence, including the right to the presence of an attorney.  *Miranda*, 384 U.S. at 479.  Another layer of protection for Defendants in custody was added by *Edwards v. Arizona*, 451 U.S. 477 (1981), wherein the Supreme Court considered a suspect's Fifth Amendment right against self-incrimination when a suspect makes incriminating statements after invoking his right to have an

---

[1] Neither the fact that an interview is conducted by law enforcement officers nor the fact that the questioned person is one whom the police suspect transform an interview into custodial interrogation.  *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

[2] The ultimate inquiry in deciding the custody question "is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983), *quoted in United States v. Chalan*, 812 F.2d 1302, 1306 (10th Cir. 1987).

attorney present during interrogation. That Court held that if police subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary. *Id*. at 484.

"The notion that custodial interrogations, in and of themselves, have inherently coercive effects on the accused is the essential predicate to the prescriptions contained in the *Miranda-Edwards* line of cases requiring counsel to be present, if requested, when interrogation occurs is a custodial setting." *Bautista*, 145 F.3d at 1147. As emphasized by the Tenth Circuit in *Bautista*, in order to implicate the *Miranda-Edwards* protective right to counsel, "both a custodial situation and official interrogation are required. Absent either a custodial situation or official interrogation, *Miranda* and *Edwards* are not implicated." *Id*.

Because it is uncontested that Defendant was not in custody during this interview, Defendant could not effectively invoke his Fifth Amendment right to silence and to counsel, even had he told the agents[3] that he wanted an attorney. There was substantial confusion in the evidence presented, however even a clear and unequivocal request for an attorney in this non-custodial setting would not be effective to invoke Defendant's right to counsel.

Even though Defendant's *Miranda* rights were not violated, his statements would nevertheless be inadmissible if they were made involuntarily. For purposes of testing the admissibility of a suspect's statements, voluntariness depends upon an assessment of "the totality of all the surrounding circumstances," including "both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Supreme

---

[3] Both the attorneys and the Court needlessly focused at the hearing on the issue as to whether or not Defendant had asked for an attorney during the interview. Given the undisputed non-custodial status of the interview, any assertion that Defendant or his sons requested an attorney is irrelevant.

Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

The Court made findings at the hearing about the characteristics of the Defendant. Most significant is his age of 72 or 73, his lack of formal education, and his inability to understand English. I find the officers' testimony credible as to the demeanor and ability of Defendant to comprehend the interview. I conclude that Defendant understood the interpreter and did not ask his sons for help. There is nothing credible in the record to indicate that Defendant was confused or did not understand the officers' questions, which he answered directly and consistently with the questions. Despite any implication in my oral ruling to the contrary, I conclude that Defendant understood the significance of what was happening during the interview.[4]

I also made findings at the hearing regarding details of the interview itself. Most important of these are the following: Defendant was specifically informed at the beginning of the interview that he was not obligated to answer any questions. Second, it appears that the interview was relatively brief. Third, the environment where the interview occurred was not unduly coercive. It took place at Defendant's home in the presence of all three of Defendant's sons. The conversation was relaxed and congenial. Fourth, Defendant had experience with law enforcement officers, and specifically with Criminal Investigator Rosina Ford. The officers were dressed casually and their weapons were not visible. Fifth, the Defendant was not subjected to any kind of physical coercion. Finally, both

---

[4] I acknowledge that Leon Blackie testified that his father was confused and did not understand what was going on. He was the only one of the four witnesses to testify to this effect, and indeed both of the officers specifically stated that Defendant seemed to understand and did not seem confused. On this point, I find that Leon Blackie's testimony is not credible.

sons testified that Agent Walter said something to the effect that if Defendant cooperated, it would go more smoothly for him. The Court finds that this is not a coercive or threatening statement.

These factors all lead the Court to the conclusion that Defendant's confession was voluntarily made. There was simply no evidence of coercive police activity. There is nothing in the record to indicate that Defendant's decision to confess was anything other than the product of rational intellect and free will.

**WHEREFORE**, for these reasons, Defendant's Motion to Suppress (Docket No. 10) is hereby **denied**.

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**